**Jerry W. BROWN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–781A73.**

Court of Appeals of Indiana, Fourth District.

April 28, 1982.

Rehearing Denied July 6, 1982.

---

1. *See, Memorial Hospital v. Hahaj*, (1982) Ind. App., 430 N.E.2d 412; *In Re Marriage of Hu-dak*, (1981) Ind.App., 428 N.E.2d 1333.

Robert G. Forbes, Hartford City, for appellant.

Linley E. Pearson, Atty. Gen., Latrielalle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Jerry W. Brown was indicted by a Blackford Circuit Court grand jury charging him with involuntary manslaughter. He was tried by jury and convicted. He appeals contending, among other things, that the unauthorized presence and participation by the investigating officer during the grand jury proceedings prejudiced his substantial rights and warranted the dismissal of the indictment.[1] We agree and reverse.[2]

The grand jury was convened to inquire into the death of a two and one-half year old child, Phillip Paul Scism, also known as "Skeeter." The child's mother, Rhonda Scism, and the defendant-appellant, Jerry Brown, were the targets of the grand jury's inquiry. During the grand jury proceedings fifteen witnesses testified. Douglas Mann, an Indiana State Police detective and the investigating officer, was present. The prosecuting attorney, Allen Mattson, conducted the examination of witnesses. Sergeant Mann actively intervened with questions to nine of the witnesses including the suspects, Brown and Scism. Near the conclusion of the grand jury's activity, Mann testified. Two tapes of interviews with the suspects obtained by Mann were played. At the conclusion of the grand jury

session, true bills were returned charging Brown with involuntary manslaughter and the mother, Rhonda Scism with involuntary manslaughter and neglect.[3]

The defendant Brown moved the trial court to dismiss the indictment against him because of the unauthorized presence of and participation by Indiana State Police Sergeant Douglas Mann in the grand jury room during the proceedings. The trial judge, after examining the transcript of the grand jury proceedings, made the following factual findings:

"Sgt. Mann was present in the Grand Jury Room and assisted the Prosecutor in presenting the testimony of witnesses, & at various times asked questions of witnesses; & at various times he provided some background information or erstatz' testimony' [sic] to the Grand Jury during the testimony of other witnesses; & he put pressure on the witness Carroll to testify more fully and honestly; & he and the Prosecutor put pressure on Jerry Brown and Rhonda Schism [sic] to testify in spite of their refusal to testify after the advise [sic] of counsel."

Based upon those facts, he correctly concluded that "this is a clear defect in the Grand Jury proceedings." *State v. Bowman*, (1981) Ind., 423 N.E.2d 605, 606 (and cases cited therein). However, the trial judge went on to conclude the following:

"Most Law-abiding citizens, such as Grand Jurors, respond well to most members of the ISP, partly because the quality of the ISP personnel is high and partly because they are trained to present themselves well to the public. It is not inconceivable that the Grand Jury may have been influenced by Sgt. Mann. The transcript taken as a whole shows that the Grand Jury in this case maintained its

---

1. The State suggested that defendant had waived this issue because it questioned whether the uncertified grand jury record was properly before us. Pursuant to our authority under Ind.Rules of Procedure, Appellate Rule 7.2(C) we ordered the certification of the grand jury record. Therefore, it is properly before us. From the trial court's findings, it is clear it considered this record.

2. Because of our decision on this issue, we need not discuss the other issue raised on appeal.

3. The record does not reveal the disposition of the charges against Rhonda Scism but she testified at Brown's trial.

own identity and remained sufficiently independent of the expressions of the Prosecutor and Sgt. Mann that no substantial prejudice resulted to the Defendant. In any event, the transcript shows that there was a sufficient showing of Probable Cause for the Indictment and arrest of the Defendant so that the error in these proceedings, if any, is clearly harmless."

Our Supreme Court recently reiterated the rule that the presence of unauthorized persons during grand jury proceedings does not warrant *per se* dismissal of an indictment. *State v. Bowman, supra.* We also understand that the presence of unauthorized persons who participate in interrogation may not result in prejudice to substantial rights. *Fair v. State*, (1977) 266 Ind. 380, 364 N.E.2d 1007 (grand jury record not before court). However, our Supreme Court also continues to recognize that when the minimal protection afforded by statute—that an indictment will follow only from impartial consideration in a neutral and detached atmosphere—is violated, the indictment must fall. *State v. Bowman, supra* at 608.

The facts found by the trial judge demonstrated that the grand jury proceeding was not conducted in the neutral and detached atmosphere required by *Bowman.* The trial court recognized the subtle influence of the presence of a police officer.[4] In addition he noted the direct participation by Sergeant Mann in examining witnesses, not only by interrogating them, but by placing pressure on witnesses to "testify more fully and honestly" and by putting pressure on the targets of the investigation to testify in spite of their counsel's advice to do otherwise. Sergeant Mann suggested that their failure to testify indicated they might have something to hide.

These facts establish more than subtle influence. The fact of Sergeant Mann's presence and the nature of his participation, though not pervading the entire hearing,

was not only detrimental to a proper atmosphere and impartial consideration of the facts, but it also demonstrated oppression of witnesses. It is wholly unreasonable to infer that the totality of these circumstances did not influence the course of the proceedings in a manner adverse to Brown's substantial right to a detached and neutral atmosphere. To permit an indictment to stand because there was sufficient evidence supporting a finding of probable cause by the grand jury regardless of the manner in which the evidence was obtained and the manner in which the grand jury hearing was conducted vitiates the purpose of the prohibition against oppressive prosecution and the letter of the statute.

The trial court erred in refusing to dismiss the indictment.

We reverse.

MILLER, P. J., and CONOVER, J., concur.

---

4. The *Bowman* court recognized this same influence and discussed the nature of the influ-

ence. *State v. Bowman, supra* at 609, fn. 1.